WR-62,099-05
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/21/2015 9:32:33 PM
Accepted 4/22/2015 8:33:07 AM
ABEL ACOSTA
CLERK

Cause Number WR-62,099-05

RECEIVED
COURT OF CRIMINAL APPEALS
4/22/2015
ABEL ACOSTA, CLERK

Ex Parte Robert Lynn Pruett

State's Response

to Application for Writ of Habeas Corpus

and

Motion for Stay of Execution

On Appeal in Cause Number B-01-M015-0-PR-B

From the 156th District Court of Bee County, Texas

**CAPITAL MURDER CASE**

**EXECUTION DATE SET FOR APRIL 28, 2015**

Melinda Fletcher
SBN 18403630
Special Prosecution Unit
P O Box 1744
Amarillo, Texas  79105
Phone 806.367.9407
Fax 866.923.9253
mfletcher@sputexas.org

# Table of Contents

Index of Authorities ................................... 3

Statement of the Case ................................. 4

Statement of Facts .................................... 5

Summary of the Argument ............................... 7

Argument .............................................. 8

  Pruett's authority specifically excludes physical
matches through fiber analysis, as was performed in
this case. Article 11.073 of the Texas Code of
Criminal Procedure does not operate to grant Pruett
relief under the facts of this case.................. 8

Prayer ............................................... 14

Certificate of Compliance ............................ 15

Certificate of Service ............................... 15

# Index of Authorities

**Texas State Case Law**

Pruett v. State, 2004 WL 3093232
    (Tex. Crim. App. 2004)......................11, 12


**Texas Code of Criminal Procedure**

Article 11.071 ......................................13

Article 11.073 ..................................passim


**Other Authorities**

Strengthening Forensic Science in the United States:
    A Path Forward (National Academies Press
    2009).......................................9, 10

Cause Number WR-62,099-05

Ex Parte Robert Lynn Pruett

To the Honorable Judges of the Court of Criminal Appeals:

Respondent, the State of Texas, respectfully presents this response in opposition to the granting of a Motion for Stay of Execution or a Writ of Habeas Corpus to Robert Lynn Pruett. Pruett's authorities for relief do not apply to the facts of this case.

# Statement of the Case

**Pruett is scheduled to be executed on April 28, 2015.** He seeks a stay of execution and a writ of habeas corpus, alleging that the testimony of the DPS Lab expert regarding the match of two pieces of masking tape is "junk" science and that it has been discredited. He asserts that the discredited evidence, combined with evidence of a conspiracy to kill Nagle and frame Pruett,

would have probably resulted in a different outcome. The State opposes the writ and the stay of execution.

# Statement of Facts

On April 23, 2002, Pruett was convicted of capital murder. The weapon found at the murder scene was a steel rod, about seven inches long. It was sharpened to a point on one end and the other end was wrapped in masking tape. (R.R. 42:275-276) Offender Jimmy Mullican testified that he was standing outside the craft shop on December 17, 1999, when offender Phillips, who was inside the craft shop, asked him to pass some masking tape on to Pruett. (R.R. 42:204) The tape was rolled onto the handle of a toothbrush. (R.R. 42:205) Offender Mullican slid it under the door of the multipurpose room. (R.R. 42:205)

Lisa Harmen Baylor, who is employed in the Texas Department of Public Safety crime lab in Corpus Christi, was responsible for collecting and processing the physical evidence. (R.R. 42:296) Baylor examined over fifty rolls of masking tape and was able to match the end

of the masking tape wrapped around the weapon to the end of a roll of masking tape found in offender Phillips' locked work station in the craft room. (R.R. 42:279, 338-339)

The DPS lab has guidelines to be followed in order to do a physical match comparison for things such as torn tape. (RR 4:307, 313) The DPS guidelines include standards and controls in order to insure consistency and accuracy. (RR 4:307) Baylor followed DPS's guidelines. (RR 4:308) She has studied using patterns as a method of matching items that were at one time connected. (RR 4:308) She also relied on an article entitled "Fractal Surfaces as Models of Physical Matches." (RR 4:308)

Baylor looked at approximately 56 rolls of tape in this case. (RR 4:309-310) She catalogued all of the physical characteristics of each roll. (RR 4:309) She then compared the rolls to the tape found on the weapon. (RR 4:309) Some rolls were quickly eliminated by gross features, such as being too wide, too thin, or the wrong color. (RR 4:310) Using a stereoscope, her FBI and DPS

training, and DPS's procedures, Baylor ultimately eliminated all but one roll of tape. (RR 4:310, 316) A senior analyst then went behind Baylor, checked her work, and arrived at the same conclusion. (RR 4:312) The match was accurate and precise enough that Baylor considered it reliable. (RR 4:311)

Baylor performed a physical comparison, or "jigsaw match", between the tape from a roll of masking tape and the tape that was taken off of the weapon. (RR 4:338) She determined that the tape from the weapon came off of a particular roll of masking tape, which had been recovered from offender Phillips's work station in the craft shop. (RR 4:279, 339)

# Summary of the Argument

Pruett asserts that he has an authority holding that the physical matching of two pieces of masking tape is "junk science" and is unreliable. In fact, Purett's authority specifically excludes talking about physical

matching through fiber analysis, such as was done in this case.

Article 11.073 does not apply to the facts of this case, and so Pruett should be denied the relief he seeks.

# Argument

**Pruett's authority specifically excludes physical matches through fiber analysis, as was performed in this case. Article 11.073 of the Texas Code of Criminal Procedure does not operate to grant Pruett relief under the facts of this case.**

Article 11.073 grants relief to a person when (1) there is relevant scientific evidence that was not available to be offered at the time of trial, and (2) the court makes the finding that if the scientific evidence had been presented at trial, on the preponderance of the evidence the person would not have been convicted. Tex. Code Crim. Proc. Art. 11.073.

Pruett's writ asserts that "it is likely that Pruett would not have been convicted had his jurors been presented with the finding of the 2009 NAS report which describes the 'science' of physical match comparisons." (See p. 16 of Pruett's writ.) He also quotes from the introduction of the National Research Council's Committee on Identifying Needs of Forensic Science Community, Strengthening Forensic Science in the United States: A Path Forward (National Academies Press 2009), and uses that as his authority for this writ.

However, Pruett does not disclose to this Court the portion of Chapter 6 of that same book, where it talks about Analysis of Fiber Evidence, and states:

> Another type of fiber analysis consists of physically matching two remnants that appear to be torn from one another. By comparing the shapes of the matching edges, and aligning any patterns in the cloth, *it can sometimes be possible to associate a fragment with the garment or other item from which it was torn*. This is a form of pattern matching, analogous to the matching of shoe and tire prints, but *it will not be discussed further here*.

<u>Strengthening Forensic Science in the United States: A Path Forward</u>, p. 162, *emphases added*.[1]

Pruett's sole authority specifically states that it does not include the type of matching performed in this case and of which Pruett now complains. His authority does not proclaim the pattern matching in this case to be "junk" science. Nor does it discredit the pattern matching used in this case, as Pruett asserts. Because the report does not include the procedure used in Pruett's case, there is no rational argument that the introduction of this report would have probably resulted in a different result at trial. For this reason alone, Pruett should be denied the relief he seeks.

As he has repeatedly done in the past, Pruett also throws in his conspiracy theory as a ground for relief. He does not have proof to support his theory. Further, this Court has already considered the admissibility of this defense and found that the trial court did not abuse

---

[1] A free download of this full report is available at http://www.nap.edu/catalog/12589/strengthening-forensic-science-in-the-united-states-a-path-forward

its discretion when it excluded the evidence. See *Pruett v. State*, 2004 WL 3093232, at *3 (Tex. Crim. App. 2004). This Court wrote:

> In his fourth point of error, the appellant again argues that the trial court denied him the fundamental constitutional right to present a meaningful defense. He specifically complains that the trial court erroneously excluded evidence "that Nagle's death may have been related to an investigation involving correctional officers smuggling contraband into the prison.
>
> Defense counsel informed the trial court outside the presence of the jury that he wanted to question Thomas J. Prasifka, the warden of the McConnell prison unit, about "the fact that there were 30 or more officers indicted for smuggling dope into the prison and that Officer Nagle may have actually ratted some of them out." Defense counsel argued that this evidence was necessary to show that "[t]here was a motive for the gang members who were getting the drugs to kill Mr. Nagle, and there was a motive for corrupt guards to kill Mr. Nagle." Defense counsel questioned Prasifka outside the jury's presence to determine if Nagle had any involvement in the investigation of the indicted correctional officers. Prasifka testified that Nagle did not act as an informant and had no involvement in the investigation. The trial court refused to permit defense counsel to pursue this line of questioning with Prasifka in front of the jury.
>
> Defense counsel failed to produce any evidence in support of his speculative theory that Nagle was killed in retaliation for acting as an informant against his fellow correctional

officers. As this court noted in Wiley v. State, "The danger of 'confusion of the issues' and 'misleading the jury' arises when circumstantial evidence tends to sidetrack the jury into consideration of factual disputes only tangentially related to facts at issue in the current case." Prasifka denied that Nagle had any involvement in the investigation. Allowing the appellant to explore this issue without further evidence and in the face of Prasifka's denial of a link between Nagle and the investigation would serve no purpose but to "confus[e] the issues" and "mislead[ ] the jury." The trial court did not abuse its discretion in refusing to permit defense counsel to question Prasifka about this issue in front of the jury. Point of error four is overruled.

*Id., internal footnotes omitted*.

Additionally, Article 11.073 only applies to "relevant scientific evidence" that was not available to be offered by a convicted person at the convicted person's trial or that contradicts scientific evidence relied on by the state at trial. Pruett has not produced any "relevant scientific evidence" to this Court, and so Article 11.073 does not operate to give him any relief.

Lastly, the authority Pruett cites was published in 2009. Article 11.073, the statute that he relies upon, was passed in 2013. Pruett has filed multiple writs since those dates, in which he could have raised these issues.

Failing to do so, he does not now have a statutory right to raise the issue at this very late date. See Tex. Code Crim. Proc. Art. 11.073 (c) and (d).

Article 11.071 provides that subsequent applications for writs of habeas corpus may only be considered when there is sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously. Tex. Code Crim. Proc. Art. 11.071 Sec. 5(a)(1). Article 11.073 provides that subsequent writs may only be considered if the claim or issue is based on relevant scientific evidence that was not ascertainable through exercise of reasonable diligence on or before the date on which the original application or a previous considered application was filed. Tex. Code Crim. Proc. Art. 11.073 (c). Pruett's current claim is not relevant scientific evidence, but it could have been presented in any of the previous applications he has filed since September 1, 2013, the effective date of Article 11.073.

The current claim is not timely, is not covered by Article 11.073, and it has no supporting authority.

# Prayer

Because there is no new evidence, no finding that the old evidence was unreliable, and no legal avenue for relief, the State prays that this Honorable Court deny Pruett's Motion for Stay of Execution and his Writ of Habeas Corpus.

Respectfully Submitted,

/s/ Melinda Fletcher

Melinda Fletcher
Appellate Attorney
SBN 18403630

Special Prosecution Unit
P O Box 1744
Amarillo, Texas 79105

Phone 806.367.9407
Fax   866.923.9253
mfletcher@sputexas.org

# Certificate of Compliance

I hereby certify that, according to Microsoft Word, this response contains a total of only 2139 words. The length of this document is in compliance with the Texas Rules of Appellate Procedure.

/s/ Melinda Fletcher

Melinda Fletcher

# Certificate of Service

I hereby certify that a true and correct copy of the foregoing Brief for the State was served on David Dow and Jeff Newberry, the attorneys for Pruett, and Assistant Attorney General Jay Clendenin via electronic mail on this the 22nd day of April, 2015.

/s/ Melinda Fletcher

Melinda Fletcher